OPINION
{¶ 1} Defendant-appellant, Willie K. Crowder, Jr., appeals from a judgment and sentence of the Franklin County Court of Common Pleas upon a jury verdict finding him guilty of two counts of robbery, in violation of R.C. 2911.02, felonies of the second and third degree. Appellant sets forth a single assignment of error for our review:
I. The trial court's decision was not supported by the evidence presented at trial and thus inequitable as against the manifest weight of the evidence.[1]
 {¶ 2} The evidence at trial consisted of the following. On November 21, 2002, at approximately 8:30 p.m., Marsha Kiel ("Kiel"), the victim, drove to use a pay phone located at the corner of Hamilton and Main Street in Whitehall, Ohio. (Tr. at 103.) She opened the door to her truck and stood outside with the door open at the phone. Kiel turned to get more change out of her car to make the telephone call, and moved her purse to the front driver's seat. As she put the money in the phone, Kiel observed someone grab her purse out of the front seat of her car. Kiel immediately grabbed hold of the bottom of her purse. At the same time, appellant held onto Kiel's purse with one hand and began hitting her in the face with a closed fist with his other hand. Kiel testified that appellant also attempted to kick her right foot out from under her. She offered that appellant did not use a weapon. Kiel screamed at appellant that he could not take her purse because it "[was] all the money [she had], and [she] still needed 30 dollars to make [her] rent for January." (Id. at 105.) In response, appellant told Kiel to touch the front of his jacket and said that if she let him in the passenger side of her car, they would get the money she needed for rent. (Id.)
 {¶ 3} Kiel knew the passenger door was locked, so she agreed to let appellant into her car. As he walked around the car, she got in, drove to the nearby Sunoco station and went inside. When she walked in the gas station, Kiel threw her purse behind the counter and yelled at the woman who was working behind the counter to call the police. Thereafter, appellant followed Kiel into the gas station. Kiel begged the woman working behind the counter, stating, "I kept telling her, `Call the police; this man just tried beating me up — This man just beat me up and tried stealing my purse.'" (Id. at 106.) As Kiel pled for assistance, appellant walked out of the gas station. Another man who was working at the gas station followed appellant "to make sure he did not get away." (Id.)
 {¶ 4} After the police arrived, Kiel gave a description of appellant, stating he was "wearing a black leather jacket with a hat, and he was approximately five feet tall, black man." (Id. at 107.) Kiel testified that she suffered no economic loss as a result of the incident. Thereafter, Kiel testified that she got in an unmarked police car to go where appellant was apprehended behind a CVS in order to positively identify him. As she got into the police car, Kiel realized that she had urinated on herself. When she arrived at the scene, Kiel identified appellant as the "man who beat [her] up and tried stealing [her] purse." (Id. at 109.) After she positively identified appellant, Kiel went to the Whitehall Police Department for further questioning. She was examined by paramedics, and testified that her injuries consisted of a swollen right ankle, swollen face and lip, broken nose and loose teeth.
 {¶ 5} Kiel testified that photographs of her injuries were taken at the police station. Later in her testimony, Kiel admitted she was not certain if any photographs were taken of her injuries. (Id. at 130.) Thereafter, Kiel again testified she "truly believed that there [were] pictures taken" of her. (Id. at 139.)
 {¶ 6} When asked about the details of her visit to Grant Hospital, Kiel stated that the personnel in the emergency room "noted all the points of injury, and then I was asked to wait in the waiting room." (Id. at 129.) She further testified that she believed a report was taken at the emergency room detailing her injuries. Id. Kiel offered she never saw a doctor while she was at Grant Hospital, yet she saw "someone who examined her and noted everything, and they gave [her] another ice pack." (Id. at 131.) After waiting six and a half hours and never being seen by a physician, Kiel testified that she became tired and left.
 {¶ 7} Kiel additionally testified that she is currently taking medication for hepatitis C and familial tremor, a nervous disorder that "causes her to shake if she does not take her medication." (Id. at 117.) Kiel stated she was taking this medication at the time of the incident. Kiel indicated that depression, anxiety and hearing loss are symptoms she experiences as a result of the hepatitis C. If she did not take her medication, Kiel offered that she "would not function normally." (Id. at 118.)
 {¶ 8} On the evening of the incident, Quiana Jones ("Jones") was working behind the counter at the Sunoco gas station located at 4600 East Main Street in Whitehall, Ohio. Jones testified that Kiel "frantically" pulled up to the gas station in her car, came inside and said, "someone had just tried to rob her, just tried to take her purse." (Id. at 141.) Jones spoke of Kiel's demeanor, stating her face was red * * * and she was crying." Id. Kiel told Jones about the altercation with appellant. Thereafter, Jones testified that appellant followed Kiel into the gas station, responding, "No, I didn't touch you," before anyone spoke to him. (Id. at 144.) Appellant went out of the store from the opposite door, and Jones testified that her male co-worker went after him. After appellant left the store, Jones called 911 and related the incident to the dispatcher. Jones also gave the dispatcher a description of appellant, stating he "had on a black leather jacket and a black pageboy hat, leather." (Id. at 142.)
 {¶ 9} Sergeant Dennis Allen ("Allen"), a patrol supervisor for the Whitehall police Department, responded to the area of the robbery scene to look for the suspect. Allen described the area of the robbery scene:
The area that the offense occurred is heavy business. It's [a] heavy business area. * * * There's a place directly west of that, where the offense occurred that is kind of concealed between a six-foot-high wooden fence and several businesses, and often times within that business area suspects usually run there to hide * * *.
It's an easy escape route or it's heavy with dumpsters, some vegetation growth; there's plenty of places to hide.
(Id. at 78.)
After checking the area, Allen encountered appellant crouched behind a dumpster in the rear of one of the businesses he described. Allen noted appellant met the general description of the suspect, and that his "[d]istinctive clothing was a leather hat and a leather jacket." (Id. at 80.) Allen ordered appellant to come from behind the dumpster and lie on the ground. Appellant did not comply, and instead ran in the opposite direction from Allen. After a short foot chase, appellant raised his hands and pinned himself against a brick wall. Thereafter, Allen apprehended appellant.
 {¶ 10} Once appellant was detained in the police cruiser, Allen testified that he made statements to indicate that he had some knowledge of the robbery. Allen stated:
He [appellant] said to me that, `I didn't hit the woman' — this is not an exact quote. He said: I didn't hit this woman, but if I did, you would know it, because I would have hurt her. And he also said `I didn't do it, but I can tell you who did.'
(Id. at 84.)
Allen also testified that appellant appeared to be highly intoxicated and "passed out shortly after [appellant and he] arrived at the police station." (Id. at 82, 85.) Allen offered that appellant's leather coat and hat were in police property. Allen acknowledged that he found no weapons on appellant when he arrested him.
 {¶ 11} On the date of the incident, at approximately 8:00 p.m., Officer Rex Adkins ("Adkins") of the Whitehall Police Department was called to the Sunoco gas station at 4600 East Main Street in Whitehall, Ohio. Adkins spoke with Kiel, and described her demeanor as "visibly upset and shaking over what had occurred." (Id. at 69.) Kiel described appellant to Adkins as a "male black in his thirties, wearing a black leather jacket and a leather ball cap." (Id. at 68.) Adkins relayed appellant's description to other officers in the area. While he was speaking with Kiel, Allen radioed Adkins to say he had appellant detained "at the rear of, I believed, Papa John's Pizza." (Id. at 69.)
 {¶ 12} As Adkins arrived at the area where appellant was being held, Allen was in the process of handcuffing appellant. Adkins testified appellant matched the description he aired over the radio. At that point, the officers checked the area for other suspects and any property. Thereafter, Kiel arrived in another police car and positively identified appellant as the man who attempted to steal her purse. Adkins stated that he did not know whether any weapons were recovered. Although he did not speak with appellant, Adkins testified that appellant "appeared to be coherent." (Id. at 74.)
 {¶ 13} Detective Ian Bourdo ("Bourdo"), an officer with the city of Whitehall, also testified on behalf of the State. He offered that he did not take pictures of Kiel following the incident, nor were there any pictures of her in the police file. (Id. at 159.) When asked if pictures were taken of appellant and his clothing, Bourdo responded that he "recall[ed] specifically photos of clothing." (Tr. at 160.) Bourdo admitted that the police department did not have appellant's black leather jacket or hat in their custody, and to his "knowledge, and to the knowledge of the property officer, it was never placed in the property [of the Whitehall Police Department]." (Id. at 163.) Additionally, Bourdo testified regarding the procedure for when items are taken from a suspect, stating that "if he was transported to county jail, they would be placed in his property, and the property would go with him to the jail." (Id. at 164.)
 {¶ 14} Mr. Michael Burnes, ("Burnes") a City of Whitehall firefighter/paramedic, was called to the Whitehall Police Department to observe and treat Kiel on the night of the incident. Regarding Kiel's injuries, Burnes testified, "[h]er face was red. I didn't notice any bruising or too much swelling at that point. I gave her an ice pack because I felt the redness was going to lead to swelling eventually." (Id. at 150.) When he was questioned further about his reason for giving Kiel an ice pack, Burnes offered "the redness on her face indicated that, in my experience, that would generally lead to swelling and probably bruising, and so I was trying to slow that down, ease some of her pain, calm her down a bit." (Id. at 151-52.) Further, Burnes stated that the redness in Kiel's face "certainly indicated that she had taken some sort of blunt force to her face." Id.
 {¶ 15} Burnes testified that he did not recall any injuries to Kiel's nose or ankle, and that he observed no bleeding. He further testified that based on his medical report, the only complaint made by Kiel on the night of the incident was pain to the face. (Id. at 154.)
 {¶ 16} Ms. Stacey Buschur ("Buschur"), supervisor of the medical records department from Grant Hospital, testified on both cross and direct examination that the hospital had no records of Kiel's hospital visit on the night of the incident. (Id. at 176-77.)
 {¶ 17} After the State rested its case, the defense moved for a Crim.R. 29 acquittal, which was denied by the trial court. The defense presented no witnesses and rested. At the conclusion of trial, the jury found appellant guilty on both counts of robbery. On September 17, 2003, the court imposed a seven-year prison sentence, with 81 days of jail time credit.
 {¶ 18} In his sole assignment of error, appellant argues that the evidence presented at trial was insufficient to support his conviction of robbery, and that the jury verdict was against the manifest weight of the evidence. He also contends that because the evidence was insufficient, the court should have granted his Crim.R. 29 motion for acquittal.
 {¶ 19} The Supreme Court of Ohio outlined the role of an appellate court presented with a sufficiency of evidence argument in State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus:
An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. * * *
See, also, Jackson v. Virginia (1979), 443 U.S. 307, 319,99 S.Ct. 2781, 61 L.Ed.2d 560.
 {¶ 20} Whether the evidence is legally sufficient is a question of law, not fact. State v. Thompkins (1997),78 Ohio St.3d 380, 386, 678 N.E.2d 541. In determining the sufficiency of the evidence, an appellate court must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, supra, at 319. Accordingly, the weight given to the evidence and the credibility of witnesses are issues primarily for the trier of fact. State v. Thomas (1982), 70 Ohio St.2d 79, 80,434 N.E.2d 1356.
 {¶ 21} A manifest weight argument is evaluated under a different standard. "The weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other."State v. Brindley, Franklin App. No. 01AP-926, 2002-Ohio-2425, at ¶ 35. In order for a court of appeals to reverse the judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court must disagree with the fact-finder's resolution of the conflicting testimony. Thompkins, supra, at 387. The evidence is not construed most strongly in favor of the prosecution. State v.Conley (Dec. 16, 1993), Franklin App. No. 93AP-387. The court engages in a limited weighing of the evidence to determine whether there is sufficient competent, credible evidence that could convince a reasonable trier of fact of the defendant's guilt beyond a reasonable doubt. Id. The discretionary power to grant a new trial based on the conviction being against the manifest weight of the evidence "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717.
 {¶ 22} Appellant's assignment of error requires us to review the evidence adduced at trial in light of the foregoing standards of review.
 {¶ 23} In support of his argument that the evidence was insufficient to convict him, appellant contends that the State failed to prove beyond a reasonable doubt that he committed any theft offense, or used force in the commission of any theft or escape offense. Appellant maintains that no weapon was recovered from the scene, and that the leather jacket and hat he was said to have worn on the date of the offense were not preserved as evidence. Appellant contends the jacket and hat are crucial pieces of evidence, because Allen testified he grabbed the back of this leather jacket to apprehend him.
 {¶ 24} Under his manifest weight argument, appellant contends the evidence indicates inconsistencies regarding the extent of Kiel's injuries, arguing that no one could corroborate the injuries that she testified resulted from the offense. Appellant theorizes it "appears strange that after she was assaulted, Kiel engaged in an argument with appellant [in the gas station] as to whether or not she was assaulted." (Appellant's Brief at 13.) Further, appellant argues that, "whether or not Kiel's medication precluded her from relating to the jury the accurate details of the incident is impossible to ascertain." (Id.) Finally, appellant argues that Bourdo and Allen's testimony is inconsistent regarding whether or not the leather jacket and hat were preserved as evidence. Appellant argues that the foregoing reasons render the guilty verdicts on the robbery charges unsupported by the manifest weight and sufficiency of the evidence.
 {¶ 25} The State contends the evidence is sufficient to affirm the jury's guilty verdict on both counts of robbery. Further, the State contends that the jury's verdict was not against the manifest weight of the evidence, arguing the credibility of Kiel and the officers are determinations primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, at paragraph one of the syllabus. The State argues that the jury heard testimony regarding Kiel's medical condition and injuries, or lack thereof and could weigh any alleged inconsistencies. Nonetheless, the State maintains that the jury chose to believe Kiel's testimony. The State asserts that appellant's argument regarding the alleged inconsistencies in the officers' testimony and whether or not the leather jacket and hat were preserved as evidence is inconsequential and goes to the weight of the evidence, not its sufficiency. In support, the State notes that Kiel, Jones, and Allen's description of appellant included that he was wearing a leather coat and hat at the time of the incident and his subsequent arrest. Further, the State contends whether or not the leather jacket and hat were preserved as evidence has no bearing on any element of robbery.
 {¶ 26} Under R.C. 2911.02, the offense of robbery is defined in pertinent part:
(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
(1) Have a deadly weapon on or about the offender's person or under the offender's control;
(2) Inflict, attempt to inflict, or threaten to inflict physical harm on another;
(3) Use or threaten the immediate use of force against another.
 {¶ 27} Here, Kiel testified that appellant approached her at the payphone and grabbed her purse. When Kiel grabbed her purse in an attempt to stop appellant from taking it, he hit her in the face with a closed fist and kicked her in the right leg. Kiel identified appellant as the man who attempted to steal her purse. Regarding her injuries, Kiel testified that she had a broken nose, swollen lip and face, swollen right ankle and loose teeth. Additionally, Burnes testified he saw redness in Kiel's face, and he gave her ice packs to decrease swelling that was likely to result based on the red marks on her face. Finally, Jones testified regarding Kiel's demeanor, stating her face was red and she was crying. Viewing the evidence in a light most favorable to the prosecution, the evidence presented was sufficient to support a finding that appellant was guilty of the elements of the offense of robbery, beyond a reasonable doubt.
 {¶ 28} Further, we find appellant's arguments under his manifest weight claim are without merit. Appellant's argument is primarily directed at the credibility of Kiel and the officers. Although we are permitted to weigh the credibility of the witnesses under a manifest weight standard, we give great deference to the fact-finder's determination of the credibility of a witness. State v. Covington, Franklin App. No. 02AP-245, 2002-Ohio-7037, at ¶ 28. The jury was in the best position to assess the credibility of Kiel and the officers. Moreover, any consideration that should be given to alleged inconsistencies in Kiel and the officers' testimony, and the weight to be given to testimony regarding the location of the leather jacket and coat, were determinations within the province of the jury. Based on the record before us, we find there was sufficient competent, credible evidence to support appellant's convictions for robbery beyond a reasonable doubt
 {¶ 29} Accordingly, we find appellant's convictions for robbery were supported by sufficient evidence, and the jury's verdicts were supported by the manifest weight of the evidence.
 {¶ 30} Based on the foregoing, appellant's single assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Petree and Klatt, JJ., concur.
[1] We interpret appellant's assignment of error to challenge both the sufficiency of the State's evidence and the manifest weight of the evidence.